IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD L. MONROE | : | CIVIL ACTION |
| | : | NO. 10-3798 |
| v. | : | |
| | : | |
| DAVID DIGUGLIELMO, et al. | : | |

O'NEILL, J.                                                                                                                        July 31, 2013

**MEMORANDUM**

Now before me is a motion by defendants David DiGuglielmo, Thomas Dohman, Lt. Karanzan, Corrections Officer McGregory, Corrections Officer Bright and Corrections Officer Hayes to Dismiss the first amended complaint of plaintiff Edward L. Monroe pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, I will grant in part and deny in part defendants' motions.

**BACKGROUND**

Plaintiff Edward Monroe is serving a term of life without parole for first degree murder and was previously an inmate at the State Correctional Institute at Graterford, where the alleged incidents in this case occurred. Dkt. No. 19 at ¶ 4. Plaintiff alleges that in late April or early May 2008, plaintiff received two handwritten letters, one from Denise Gaines, a witness at his murder trial, and one from an unknown second party. Id. at ¶ 15. Ms. Gaines died on January 25, 2009 before plaintiff could locate or contact her. Id. at ¶ 42.

Gaines' letter stated that she had lied in her trial testimony against plaintiff due to pressure from the Police Department and District Attorney's office. Id. at ¶ 16. Plaintiff alleges that Gaines' letter "explained that representatives of the Police Department and the District Attorney's Office had convinced her to lie by threatening her with criminal charges, warning that

they would take away her children, and promising her a sentence reduction in an unrelated criminal matter." Id. The letter from the unknown sender reported that the author had assisted Gaines with the drafting of her letter and also that the author wished to make amends for previous wrongdoing. Id. at ¶ 17. Plaintiff alleges he then began to explore how the letters could be used to appeal his conviction. Id. at ¶ 18. He claims he made copies of the materials and gave them to two other inmates at SCI Graterford, Anthony Dickerson and Gregory Stover, for safekeeping at some point prior to June 21, 2008. Id. at ¶ 19.

In or around June 2008, plaintiff was involved in drafting a pamphlet that encouraged the other inmates at SCI Graterford to assert their civil rights and avoid becoming overly friendly with corrections officers. Id. at ¶ 20. This pamphlet included blank spaces for the identification of inmates believed to be unduly cooperative with corrections officers. Id.

On June 21, 2008, defendant McGregory entered plaintiff's cell to conduct a search and discovered copies of the pamphlet. Id. at ¶¶ 21-22. At the time plaintiff had his letters and legal materials out in his cell. Id. at ¶ 21. McGregory then took plaintiff to defendant Karanzan's office for an interview concerning the pamphlet. Id. at ¶ 22. During the search and escort to Karanzan's office, plaintiff requested that he be allowed to secure his letters and legal materials. Id. at ¶ 23. McGregory denied plaintiff's request, but a security lock was placed on plaintiff's cell and McGregory said that plaintiff's cell was secure. Id. at ¶¶ 22-23.

During plaintiff's interview, McGregory left Karanzan's office after receiving a whispered instruction from Karanzan and returned some time later with plaintiff's typewriter from his cell. Id. at ¶¶ 24, 26. Plaintiff alleges that while in plaintiff's cell, McGregory seized or destroyed his letters and related legal materials. Id. at ¶ 25. After the interview, plaintiff was placed in the Restricted Housing Unit (RHU) where Karanzan denied plaintiff's requests to

either secure his legal materials and letters or have them delivered to his new location. Id. at ¶¶ 26-28.

Following plaintiff's transfer to the RHU, on or around June 22, 2008, inmate Matthew Smith observed two corrections officers (John Does 1 and 2) removing plaintiff's belongings, including his legal materials from his former cell. Id. at ¶ 30. Plaintiff contends he later learned from Smith that John Does 1 and 2 did not place his legal materials and letters in storage along with the other materials taken from plaintiff's cell. Id. Plaintiff then sent a written request to SCI Graterford's Property Room on July 3, 2008, to have his legal materials and letters delivered to his new location. Id. at ¶ 31. On or around July 10, 2008, plaintiff received a box of legal materials which did not include the letters or related legal materials. Id. at ¶ 32. Plaintiff then requested and received permission to access the Property Room on July 31, 2008, and discovered that his letters and related legal materials were not present in the storage room. Id. at ¶¶ 33-34.

Plaintiff filed a formal grievance related to the missing letters and legal materials (No. 239288) on August 12, 2008. Id. at ¶ 35. Plaintiff subsequently filed two appeals, a Grievance Appeal and a Final Grievance Appeal, on August 22 and October 31, 2008, respectively. Id. at ¶¶ 36-37.

After discovering that his letters and legal materials were missing plaintiff contacted inmates Dickerson and Stover to obtain the copies he had provided them for safekeeping, but was informed that they had been seized and destroyed in a search by corrections officers on July 4, 2008. Id. at ¶ 38. In his August 22, 2008 Grievance Appeal, plaintiff asserted that the "legal materials that he and . . . Dickerson and Stover were working on were either destroyed, discarded, misplaced or the like . . . ." Dkt. No. 22-1 at ECF p. 5. Plaintiff's amended complaint

alleges that defendant Dohman ordered defendants Hargrove[1], Bright and John Does 3 through 6 to enter and search Dickerson and Stover's cell and, when they did, they took and destroyed all legal materials in the inmates' possession. Dkt. No. 19 at ¶ 39. The corrections officers refused to cease their search and destruction of materials even after being informed that the materials in question belonged to plaintiff. Id. Plaintiff alleges that Dohman ordered the destruction of materials in retaliation for past lawsuits plaintiff filed against Dohman and other employees of SCI Graterford. Id. at ¶ 41.

On August 16, 2008, while plaintiff was in the RHU, defendant Hayes entered his cell to conduct a search and seized his personal items. Dkt. No. 19 at ¶¶ 45-46. Plaintiff asked for the items to be returned, but Hayes refused to do so and used abusive language toward plaintiff. Id. at ¶¶ 46, 48. Plaintiff requested assistance from Lt. White[2], who told Hayes that plaintiff was permitted to have the personal items and White then placed the bag of items near plaintiff's cell. Id. at ¶ 49. Plaintiff alleges that Hayes instructed another corrections officer, John Doe 7, to dispose of the bag of items. Id. at ¶ 50. John Doe 7 left the area with the bag of items and plaintiff never obtained them after the searches were concluded. Id. Plaintiff asserts that Hayes later said that since plaintiff "likes to do lawsuits . . . . he should do a lawsuit regarding the search." Id. at ¶ 51. Plaintiff contends that Hayes ordered John Doe 7 to take his personal items in retaliation for plaintiff's previous lawsuits filed against her fellow corrections officers. Id. at ¶ 47.

On August 19, 2008, plaintiff filed another formal grievance (No. 240649) related to the missing items. Id. at ¶ 52. He received a response from Superintendent DiGuglielmo on March,

---

[1] Moving defendants contend that Hargrove has not been served and is no longer employed at SCI Graterford. Dkt. No. 22 at ECF p. 3 n.1.
[2] Lieutenant White is not named as a defendant in the present case.

4

13, 2009 with an approval for reimbursement in the amount of $17.75.  Id. at ¶ 53.  In order to accept the reimbursement, Plaintiff had to release any claims he had related to the grievance, which he refused to do.  Id. at ¶ 53.

Plaintiff now asserts a claim under section 1983 for a violation of his right of access to the courts under the First and Fourteenth Amendments against defendants DiGuglielmo, Dohman, Karanzan, McGregory, Bright, Hargrove and John Does 1-6.  Id. at ¶¶ 54-60.  Plaintiff also contends that the conduct of these defendants denied him an opportunity to pursue a non-frivolous claim for relief under Pennsylvania's Post-Conviction Relief Act, 42 Pa. Cons. Stat. Ann. § 9543.  Id. at ¶ 57.  In addition, plaintiff asserts a claim against all defendants for unlawful retaliation for his previous filings of grievances and lawsuits.  Id. at ¶¶ 61-67.  Plaintiff seeks a declaration that defendants have violated his right of access to the courts, an award of monetary damages to compensate him for deprivation of his constitutional rights, punitive damages sufficient to punish and deter defendants for the past and potential future conduct and any other relief that the court deems just and proper.  Id. at ECF p. 11.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)."  Id.

5

(citations omitted). The complaint must state "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 321 (3d Cir. 2008), quoting Twombly, 550 U.S. at 556. The Court of Appeals has made clear that after Ashcroft v. Iqbal, 556 U.S. 662 (2009),

> conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 556 U.S. at 678. The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

Id. at 210-11, quoting Iqbal, 556 U.S. at 679. The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679.

## DISCUSSION

As I am ruling on a motion to dismiss, I will accept plaintiff's factual assertions in the light most favorable to him. See Christopher v. Harbury, 536 U.S. 403, 406 (2002).

6

**I.     Failure to Exhaust**

Defendants argue that I must dismiss plaintiff's claims against all defendants save Hayes and Karanzan because plaintiff has not exhausted his administrative remedies against defendants who he did not specifically name in his grievances. Dkt. No. 22 at ECF p. 16-17. Failure to exhaust is an affirmative defense for which defendants bear the burden of proof. Jones v. Bock, 549 U.S. 199, 216 (2007).

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 520 (2002) (holding that the exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences"); see also Woodford v. Ngo, 548 U.S. 81, 90 (2006) ("[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules"). This exhaustion requirement applies to all suits arising from aspects of prison life, regardless of "whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532.

In Pennsylvania state correctional institutions, inmates must follow a three-step grievance procedure prior to bringing suit in federal court. Johnson v Townsend, 314 F. App'x 436, 441 (3d. Cir. 2008). First, an inmate's filed grievance receives an Initial Review by the Facility Grievance Coordinator. DC-ADM 804 § 1-3(A)-(B). The inmate may then appeal this Initial Review Response/Rejection within fifteen working days, at which point the Facility Manager will issue the Appeal Response. DC-ADM 804 § 2(A). The inmate may then file an Appeal to Final Review of the Facility Manager's decision to the Secretary's Office of Inmate Grievances

and Appeals. DC-ADM 804 § 2(B). The result of an inmate's failure to comply with this system "will result in a procedural default of the issue and effectively bar the inmate from bringing his claim in federal court." Johnson, 314 F. App'x at 441, citing Spruill v. Gillis, 372 F.3d 218, 231 (3d Cir. 2004).

At issue here is whether plaintiff sufficiently exhausted his administrative remedies with respect to either his grievance pertaining to his letters and legal materials or his grievance regarding his personal items. Defendant cites Johnson, 314 F. App'x at 442, in arguing that plaintiff's failure to identify the persons "who could be helpful in resolving the grievance" creates a procedural default barring plaintiff from proceeding with his claims against any defendant other than the defendants specifically named on plaintiff's grievance forms, i.e., Karanzan and Hayes. Dkt. No. 22 at ECF p. 17. While the PLRA requires that plaintiffs exhaust available administrative remedies, it does not require plaintiffs to name in their grievances all defendants who are later included in a civil suit. Jones v. Bock, 549 U.S. 199, 217 (2007). Pursuant to Pennsylvania DOC policy, grievances must include "facts relevant to the claim" and, "to the extent practicable," "should identify any persons who may have information that could be helpful in resolving the grievance." Spruill, 372 F.3d at 233.

### A. Grievance 239288: Letters and Legal Materials

In Grievance 239288, plaintiff listed Karanzan and a second unnamed officer as being responsible for the loss of his legal materials prior to his removal to the RHU on June 21, 2008. Dkt. No. 22-1 at ECF p. 2. After filing his initial grievance regarding the loss of his letters and legal papers, plaintiff made two appeals to the Facilities Manager and the Chief Grievance Officer at the Office of Inmate Grievance and Appeals. Dkt. No. 19 at ¶¶ 36-37; see also Dkt. No. 22-1 at ECF p. 4-5, 9. In the appeal dated August 22, 2008, plaintiff asserted that he "was

8

working on his legal materials with . . . Dickerson and . . . Stover . . . , the same day [plaintiff] was taken to security and then to RHU." Dkt. No. 22-1 at ECF p. 5. He claimed that he "ha[d] just recently learned that the other legal materials that he and . . . Dickerson and Stover were working on were either destroyed, discarded, misplaced or the like as well." Id. In his amended complaint, plaintiff claims that after Karanzan and the unnamed officer removed his letters and legal materials from his cell, the only remaining copies of those documents were under the care of inmates Dickerson and Stover and were taken or destroyed by John Does 1 and 2 while plaintiff remained in the RHU. Dkt. No. 19 at ¶¶ 5-6; Dkt. No. 22-1 at ECF p. 5.

Under the allegations in his amended complaint, I find that plaintiff named the officers responsible for the loss of his letters and legal materials "to the extent practicable" under the requirements of DC-ADM 804. Spruill, 372 F.3d at 233. Because he was in the RHU, plaintiff had no opportunity to discover the identities of the correctional officers responsible for the alleged destruction of his letters and legal materials, nor could he discover the precise time in which this occurred. Dkt. No. 19 at ¶ 6. At this stage of the proceedings, I find that defendants have not met their burden to show that plaintiff failed to exhaust his administrative remedies with respect to his claim regarding the loss of his letters and legal materials.

B. Grievance 240649: Personal Belongings

With respect to his claim regarding the removal of his personal belongings, in Grievance 260649 plaintiff stated that Hayes whispered to John Doe 7 who then removed plaintiff's bag containing his belongings and disappeared. Dkt. No. 23-1 at ECF p. 3. Plaintiff contends that by identifying Hayes and the unknown officer in his grievance, he has substantially complied with the administrative process required for exhaustion. Dkt. No. 23 at ECF p. 14. Defendant disagrees and argues that plaintiff's failure to name the corrections officer referenced in

9

Grievance 260649 warrants dismissal of plaintiff's amended complaint. Dkt. No. 22 at ECF p. 17-18.

I find that that under the facts alleged in the amended complaint, plaintiff did not exhaust his administrative remedies with respect to his grievance about the removal of his personal belongings. See AD-DCM 804 § 2 (describing the three stage process of filing grievances and appeals prior to exhaustion). I reach this conclusion not because plaintiff did not identify John Doe 7 in the grievance by name, but because plaintiff did not fully pursue his administrative remedies with respect to his claim regarding his personal belongings. Plaintiff filed the grievance in question, but upon receipt of an approval for reimbursement from the Grievance Responder it is not clear whether plaintiff filed an appeal. Dkt. No. 23-1 at ECF p. 2-4; Dkt. No. 19 at ¶¶ 52-53. Because his amended complaint does not allege that he appealed the decision before bringing this action in the District Court, his allegations do not establish that he completed the required procedure under AD-DCM 804 § 2 and therefore he cannot proceed on any claim arising from this grievance. See Oriakhi v. U.S., 165 F. App'x 991, 993 (3d Cir. 2006) (holding that a plaintiff must complete all available administrative remedies prior to filing of any complaint in federal court); Jacobs v. Pa. Dep't of Corr., 148 F. App'x 107, 109 (3d Cir. 2005) (affirming district court's dismissal for plaintiff's failure to exhaust based on his failure to comply with the requirements of the prison grievance system prior to filing his civil action); Williamson v. Wexford Health Sources, Inc., 131 F. App'x 888, 890 (3d Cir. 2005)(stating that inmate "was required to present his claim at all levels of the administrative appeals process before filing suit" and finding that his claim was procedurally defaulted "[b]ecause any attempt to appeal the denial of the initial grievance would now be time-barred").

Therefore, I will dismiss plaintiff's claim against Hayes and John Doe 7 with leave to amend to the extent that he is able to allege that he fully exhausted his administrative remedies with respect to his grievance regarding the removal of his personal belongings. See Shane v. Fauver, 213 F.3d 113, 116 (3d Cir. 2000) (holding district court should not dismiss a plaintiff's claims "without either granting leave to amend or concluding that any amendment would be futile").

## II.     Claims Under Section 1983

To state a cause of action under section 1983, plaintiff must show both that defendants acted under color of state law, and that their actions deprived him of right secured by the United States Constitution or federal statutes. Thomas v. Arias, No. 06-291, 2007 WL 210087, at *3 (E.D. Pa. Jan. 23, 2007), citing Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993). In his amended complaint, plaintiff asserts claims under section 1983 for a violation of his right of access to the courts and for retaliation for his exercise of his rights under the First and Fourteenth Amendments. Dkt. No. 19 at ECF p. 9-11.

### A.     Claims Against DiGuglielmo and Bright

In their motion to dismiss, defendants argue that the Eleventh Amendment bars any claims against them in their official capacities. Plaintiff concedes this argument, but also asserts claims against defendants in their individual capacities. Defendants contend that plaintiff has not sufficiently alleged facts to warrant the imposition of individual liability on DiGuglielmo and Bright. To establish their individual liability for plaintiff's claims under section 1983, plaintiff must show that they had "personal involvement in the alleged wrongdoing." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of

actual knowledge and acquiescence." Rode, 845 F.2d at 1207 (citations omitted). Such allegations "must be made with appropriate particularity." Id.

### 1. Claims Against DiGuglielmo

To establish DiGuglielmo's individual liability, plaintiff must show that DiGuglielmo knowingly violated or ordered others to violate plaintiff's constitutional rights or that he "had knowledge of and acquiesced in his subordinates' violations." Baker v. Monroe Twp., 50 F.3d 1186, 1190-21 (3d Cir. 1995). Plaintiff argues that DiGuglielmo had the requisite knowledge and acquiescence because he "personally reviewed and failed to remedy the wrongs complained of in each [of plaintiff's two] grievance[s]." Dkt. No. 23 at ECF p. 5.

Plaintiff's amended complaint only states that defendant DiGuglielmo responded to grievance No. 240649 "by approving reimbursement for [p]laintiff in the amount of $17.75. Dkt. No. 19 at ¶ 53. There are no specific allegations made in the amended complaint with respect to defendant DiGuglielmo's involvement in the handling of plaintiff's other grievance. Plaintiff's sole claim that DiGuglielmo responded to grievance No. 240649 is not sufficiently particular to plead that he had the requisite participation or actual knowledge. See Rode, 845 F.2d at 1145; see also Robus v. Pa. Dep't of Corr., No. 04-2175, 2006 WL 2060615, at *3 (E.D. Pa. Jul. 20, 2006) (dismissing claims against the defendant where the "amended complaint fails to cite any facts that would give rise to actual knowledge"); Carter v. State Corr. Inst. at Graterford Med. Health Dep't, No. 04- 3285, 2004 WL 3019239, at *5 (E.D. Pa. Dec. 28, 2004) (dismissing the plaintiff's claim against the defendant where it failed to state any particular facts alleging the defendant's personal involvement). Therefore I will dismiss plaintiff's claim against DiGuglielmo with leave to amend to the extent that plaintiff can sufficiently allege facts to show DiGuglielmo's personal involvement in the alleged violations of his rights.

### 2. Claims Against Bright

Plaintiff alleges that Bright entered the cell of inmates Dickerson and Stover under Captain Dohman's direction to destroy plaintiff's legal materials in retaliation for an earlier lawsuit plaintiff filed against Dohman and other corrections officers. Dkt. No. 19 at ¶¶ 38-41. Plaintiff further states that Bright continued to take part in the destruction of plaintiff's legal materials even after being informed that they were the property of plaintiff. Id. at ¶ 39.

These allegations, if true, state with "appropriate particularity" Bright's "actual knowledge and acquiescence" in the destruction of plaintiff's legal materials. Rode, 845 F.2d at 1207. Plaintiff's allegations that Bright continued to destroy his letters and legal materials even after being informed by Dickerson and Stover that they were plaintiff's property create a reasonable presumption that Bright was "clearly informed of the various constitutional violations being inflicted upon [p]laintiff." Feliciano v. Dohman, No. 12-4713, 2013 WL 1234225, at *7 (E.D. Pa. Mar. 26, 2013) (stating that claims detailing the method and type of notice provided to a defendant regarding the constitutional violations committed against plaintiff may succeed against a 12(b)(6) motion to dismiss). To the extent that plaintiff can sufficiently allege the other elements of his claims against Bright, I find that plaintiff's amended complaint sufficiently alleges Bright's personal involvement to support a claim against Bright in his individual capacity.

### B. Count I: Right of Access to the Courts

Plaintiff contends that defendants' actions unlawfully denied him an opportunity to bring exonerating evidence to court under the First and Fourteenth Amendments, as well as an opportunity to pursue a non-frivolous claim for relief under the Post-Conviction Relief Act. Dkt. No. 19 at ¶¶ 55-57. Defendants argue that plaintiff's amended complaint fails to state a claim for

denial of access to the courts because he has not sufficiently alleged an actual injury resulting from the destruction of his legal materials. Dkt. No. 22 at ECF p. 12-13. I agree with defendants.

Under the First and Fourteenth Amendments, state prisoners have a right to petition the government and thus a right of access to the courts. Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008); see also Lewis v. Casey, 518 U.S. 343, 346 (1996), quoting Bounds v. Smith, 430 U.S. 817, 828 (1977) ("'the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law'"). Only two types of cases allow prisoners to proceed on their access to court claims: direct or collateral challenges to their sentences or conditions of confinement. Lewis, 518 U.S. at 354-55. Plaintiff specifically alleges that he intended to challenge his sentence with the information contained in the letters he received in approximately late April or early May of 2008. Dkt. No. 19 at ¶¶ 15, 18. He asserts a lost opportunity to file a claim seeking exoneration under the Post-Conviction Relief Act using the letters as newly discovered exculpatory evidence. Dkt. No. 19 at ¶ 43.

In order to successfully assert that defendants' actions have caused him to lose an opportunity to present a legal claim, plaintiff must show that he has (1) suffered an actual injury in "that [he] lost [his] chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that there is no other 'remedy available to [him] as recompense' for the lost claim other than the present denial of access suit." Monroe, 536 F.3d at 205, quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002). To withstand defendant's motion, plaintiff's claim must show that the underlying claim is based on "more than mere hope," and he must sufficiently describe the

remedy lost by defendants' actions. Monroe, 536 F.3d at 205, citing Christopher, 536 U.S. at 416-17; see also Miller v. Pa. Dep't of Corr., No. 12-3040, 2013 WL 1234811, at *1 (holding that general claims such as "lack of resources at specific times, prison logistics," etc, are not sufficient to identify the loss or rejection of a "specifically identified and nonfrivolous legal claim."). The Court of Appeals has explained that a plaintiff must specifically state in his complaint the underlying claim with the requirements of Federal Rule of Civil Procedure 8 to the same degree as if the underlying claim was being pursued independently. Christopher, 536 U.S. at 417.

Plaintiff contends that, absent the letters and legal materials removed by defendants (particularly in light of the death of Gaines, the letter's author), he has no realistic opportunity for another legal remedy other than that provided by the present suit. He does not, however, specifically allege how the testimony that Gaines allegedly sought to recant would allow him to mount a nonfrivolous challenge to his sentence. Plaintiff thus "has not alleged facts in the amended complaint from which it can reasonably be inferred that the case [he intended to make with the information in the letters he received] was not frivolous." Green v. Nish, 12-CV-00321, 2012 WL 4049834, at *4 (M.D. Pa. Aug. 27, 2012) report and recommendation adopted, 12-321, 2012 WL 4049974 (M.D. Pa. Sept. 13, 2012); see also Jacobs v. Beard, 172 F. App'x 452, 456 (3d Cir. 2006), citing Christopher, 536 U.S at 414 ("the underlying lost or rejected claim must be specifically identified and meritorious"); Butler v. Myers, 241 F. App'x 818, 820 (3d Cir. 2007) (noting that a denial of access claim is insufficient when it does not adequately allege causation or the direct link between defendants' actions and an actual injury suffered by plaintiff). Accordingly, I will grant defendants' motion to dismiss Count I of plaintiff's amended complaint, but will allow plaintiff to amend his complaint to the extent that he is able to allege

15

specific facts to support his claim that he suffered an actual injury. Any amendment should specifically identify how the information contained in Gaines' letter would allow him to mount a nonfrivolous challenge to his sentence.

### C. Count II: Retaliation

Plaintiff alleges that defendants retaliated against him "for the filing of various grievances and lawsuits" and that their "conduct was in violation of Plaintiff's rights under the First and Fourteenth Amendments . . . ." Dkt. No. 19 at ¶¶ 64-65. To state his claim for retaliation in violation of his rights under the First or Fourteenth Amendment, plaintiff must establish that he (1) engaged in constitutionally protected conduct, (2) prison officials took adverse action against him sufficient to "deter a person of ordinary firmness from exercising his constitutional rights," Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000); and (3) the "the constitutionally protected conduct was a 'substantial or motivating factor' in the decision to discipline" the inmate. Rauser v. Horn, 241 F.3d 330, 333-334 (3d Cir. 2001), quoting Mount Healthy Bd. of Ed. v. Doyle, 429 U.S. 274, 287 (1977); see also Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir. 2002) (noting that the third factor requires the demonstration of a "causal link between constitutionally protected action and the adverse action taken against him").

"The filing of grievances and lawsuits against prison officials constitutes constitutionally protected activity." Mearin v. Vidonish, 450 F. App'x 100, 102 (3d. Cir. 2011) citing Milhouse v. Carlson, 652 F.2d 371, 373-84 (3d. Cir. 1981). If plaintiff's allegations are true, he engaged in constitutionally protected conduct prior to the alleged seizure and destruction of his legal materials and letters when he filed lawsuits against Dohman and other corrections officers, Dkt. No. 19 at ¶ 41, and his amended complaint meets the first element of the test set forth in Rauser. 241 F.3d at 333-34.

16

With respect to the second element, plaintiff alleges and defendants do not dispute that his letters and legal materials were seized from his cell and that copies in Dickson and Stover's cell were destroyed. Dkt. No. 19 at ¶¶ 40-41, Dkt. No. 22 at ECF p. 15. Defendants do not argue that the destruction of plaintiff's legal materials and letters was insufficient to deter a person of ordinary firmness from exercising his constitutional rights. Indeed, plaintiff's allegations rise above the level required to deter a person of ordinary firmness in that, if true, the seizure of his materials would lead a person to "think twice about performing an action" which is protected under the Constitution. Montgomery v. Ray, 145 F. App'x 738, 741 (3d. Cir. 2005).

Defendants instead contend that plaintiff has not alleged that "Defendants DiGuglielmo, Karanzan, McGregory and Bright knew plaintiff had engaged in protected activity and punished him because of it." Dkt. No. 22 at ECF p. 12. I agree. Likewise, plaintiff's amended complaint contains no allegations that Hargrove or John Does 1-7 had the requisite knowledge of plaintiff's protected activity. A plaintiff "may demonstrate causation through a 'pattern of antagonism' following the plaintiff's protected conduct or unusually suggestive temporal proximity" between the protected and retaliatory conduct. Motto v. Wal-Mart Stores East, LP, No. 11-2357, 2013 WL 1874953, at *8 (E.D. Pa. May 13, 2013) quoting Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997). However, the plaintiff must also properly "allege a chronology of events from which retaliation may be inferred." Bendy v. Ocean Cnty Jail, 341 F. App'x 799, 802 (E.D. Pa 2009) (citations and internal quotations omitted).

Plaintiff alleges only that "Dohman ordered the destruction of [plaintiff's] materials in retaliation for a lawsuit filed by Plaintiff . . . ," Dkt. No. 19 at ¶ 41, and that "Hayes . . . stated that she took Plaintiff's property because Plaintiff had filed lawsuits against her fellow corrections officers." Id. at ¶ 47. He does not allege that DiGuglielmo, Karanzan, McGregory,

17

Bright, Hargrove or John Does 1-7 had any knowledge of his previously filed lawsuits.  Nor has he alleged sufficient facts to establish a "pattern of antagonism."  Likewise, he cannot rely on an "unusually suggestive temporal proximity" to support his claims of retaliation against the defendants other than Dohman and Hayes because he does not allege when he filed his other lawsuits.  See Mearin v. Swartz, No. 11-669, 2013 WL 2641801, at *9 (E.D. Pa. June 12, 2013) (dismissing plaintiff's retaliation claim where "he [did] not allege when [his] suit was filed, that Defendants were aware that the suit had been filed or any other facts that would indicate that Defendants' actions were precipitated by the filing of that suit").  Absent any allegations to demonstrate causation with respect to DiGuglielmo, Karanzan, McGregory, Bright, Hargrove or John Does 1 and 7, I will dismiss Count II of plaintiff's amended complaint as against them with leave to amend.

With respect plaintiff's retaliation claims against Dohman and Hargrove, I find as follows.  Plaintiff alleges that Dohman "ordered defendants Hargrove, Bright and John Does 3 through 6" to enter Dickerson and Stover's cell for the purpose of destroying plaintiff's letters and legal materials.  Dkt. No. 19 at ¶¶ 40-41.  He claims that Dohman ordered them to destroy his legal materials in response to a lawsuit filed by plaintiff, Dickerson and Stover against Dohman and other corrections officers at SCI Graterford.  Id.  Plaintiff further contends that Hayes and John Doe 7 seized and destroyed his personal belongings in response to plaintiff's having pursued lawsuits against other corrections officers at SCI Graterford.  Dkt. No. 19 at ¶¶ 47-48, 51.

Defendants concede that plaintiff's amended complaint includes specific allegations of retaliation by Dohman and Hayes.  Dkt. No. 22 at ECF p. 11.  However, they contend that they may defeat plaintiffs' retaliation claim because plaintiff "violated legitimate prison regulations"

18

and "was not engaged in constitutionally protected conduct." Id. at ECF p. 14. Prison officials may defeat a retaliation claim if they can demonstrate that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334; see also Wilson v. Budgeon, No. 05-2101, 2007 WL 464700 at *5-6 (M.D. Pa. Feb. 13, 2007), quoting Thaddeus-X v. Blatter, 175 F.3d 378, 395 (6th Cir.1999) ("if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one [of the retaliation analysis]") (alteration in original).

Defendants argue that plaintiff's letters and legal materials were seized as a result of a pending investigation into plaintiff's participation in the creation of a pamphlet in violation of SCI Graterford's rules. Dkt. No. 22 at ECF p. 15. However, plaintiff's amended complaint does not include any allegations from which I can find that defendants had a legitimate reason related to prison procedures or any alternate valid reason for the destruction of materials belonging to plaintiff. Baker v. Williamson, 453 F. App'x 230, 235 (3d Cir. 2011). At this stage of the proceedings, I may only address the "allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Fosburg v. Lehigh Univ., No. 98-864, 1999 WL 124458, at *3 (E.D. Pa. Mar. 4, 1999), quoting Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1993), cert. denied, 510 U.S. 1042 (1994). Accordingly, I may not consider whether plaintiff's creation and potential distribution of pamphlets constitutes a sufficient violation of the prison facility's rules to justify the seizure of his legal materials, as plaintiff's amended complaint contains no allegations regarding SCI Graterford's rules pertaining to the use or creation of pamphlets by inmates. See Fosburg, 1999 WL 124458, at *3.

Considering only the allegations set forth in plaintiff's amended complaint, I cannot find

19

that defendants had a "legitimate penological interest" in the seizure and destruction of plaintiff's legal materials and therefore I cannot dismiss plaintiff's retaliation claim against Hayes and Dohman on this basis. Rauser, 241 F.3d at 334. However, because I have found that plaintiff failed to exhaust his administrative remedies with respect to his claims against Hayes, plaintiff's retaliation claim against Hayes cannot withstand defendants' motion to dismiss. Accordingly, only plaintiff's retaliation claim against Dohman remains.

      An appropriate Order follows.