IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD L. MONROE | : | CIVIL ACTION |
| | : | NO.  10-3798 |
| v. | : | |
| | : | |
| DAVID DIGUGLIELMO, et al. | : | |

O'NEILL, J.                                                                                                   January 30, 2014

### MEMORANDUM

Now before me is a motion by defendants David DiGuglielmo, former superintendent of the State Correctional Institution at Graterford, Major Thomas Dohman, Lt. Karanzan, Corrections Officer McGregory, Corrections Officer Bright and Corrections Officer Hayes to dismiss the second amended complaint of plaintiff Edward L. Monroe.[1]  For the reasons that follow, I will grant defendants' motion.

### BACKGROUND

Plaintiff Edward Monroe is serving a term of life without parole for a criminal homicide conviction and was previously an inmate at the State Correctional Institution at Graterford, where the alleged incidents in this case occurred.  Dkt. No. 19 at ¶ 4.  In his second amended complaint, plaintiff alleges that in late April or early May, 2008, he received two handwritten letters, one from Denise Gaines, a witness for the prosecution at his murder trial, and one from an unknown second party.  Id. at ¶ 15.  Ms. Gaines died on January 25, 2009 before plaintiff could locate or

---

[1] Defendants' motion seeks dismissal of plaintiff's second amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim and pursuant to Rule 12(b)(1) as "the proper mechanism for raising the issue of whether Eleventh Amendment immunity bars federal jurisdiction."  Dkt. No. 27 at ECF p. 4.  Because defendants raise no arguments with respect to the Eleventh Amendment in their supporting memorandum of law, I will review the second amended complaint for failure to state a claim pursuant to Rule 12(b)(6).

contact her.  Id. at ¶ 43.

Plaintiff claims that in Gaines' letter, she

> apologized for failing to tell the truth while under oath in Plaintiff's criminal trial.  She acknowledged that she had lied in testifying against Plaintiff.  She noted that she was aware that the Police Department had planted evidence in the form of a burnt purse against Plaintiff.  She explained that representatives of the Police Department and the District Attorney's office had convinced her to lie by threatening her with criminal charges, warning that they would take away her children, and promising her a sentence reduction in an unrelated criminal matter.  Gaines cited her recent embrace of God and her active involvement in church activities as the motivation behind her recantation.

Id. at ¶ 16.  He alleges that the writer of the anonymous letter claimed to have "been present and assisted Gaines with the drafting of the Gaines Letter" and "preferred to remain anonymous for the time being because he or she feared for his or her safety.  However, the writer also stated that he or she would make things right for his or her previous wrongdoing." Id. at ¶ 17.  "There was no return address on the envelope or [on] either of the Letters." Id. at ¶ 15.

Plaintiff claims that after he received the letters, he "began to research how he could use the letters to secure his freedom" and that he "prepared and retained legal materials, including research notes, draft pleadings and petitions, and supporting memoranda of law."  Id. at ¶ 18.  He claims he made copies of the materials and gave them to two other inmates at SCI Graterford, cellmates Anthony Dickerson and Gregory Stover, for safekeeping at some point prior to June 21, 2008.  Id. at ¶ 19.

Plaintiff alleges that on July 31, 2008, he discovered that his copies of the letters and legal materials related to the letters were missing.  Id. at ¶ 34.  He asserts that "[a]s a result of the destruction of the Letters and legal materials related to the Letters, plaintiff lost the opportunity to pursue a non-frivolous claim for relief," id. at ¶ 44, and that he "lost his best and only

opportunity to confirm the existence of exculpatory evidence sufficient to overturn his conviction." Id. at ¶ 50. He claims that with the documents he "could have sought relief under the Post-Conviction Relief Act . . . by presenting the letters as newly discovered exculpatory evidence," id. at ¶ 44, and that he "could have sought the appointment of counsel to further investigate the exculpatory information described therein." Id. at ¶ 45. He claims that with the documents "supporting his suspicions" he "would have been far more likely to either have counsel appointed or to find pro bono counsel willing to pursue the reversal of his conviction." Id. at ¶ 46. He contends that "[c]ounsel could have taken steps to locate Gaines and preserve any exculpatory evidence in her possession prior to her death, and to ascertain the identity of the author of the Anonymous Letter and secure exculpatory evidence available from that individual." Id. at ¶ 47. Plaintiff alleges that "Gaines could have identified exculpatory evidence sufficient to show that prosecutors and police officers had manufactured inculpatory evidence and coerced testimony in order to falsely convict Plaintiff." Id. at ¶ 48. He alleges that "the exculpatory evidence would have been sufficient to have changed the outcome of his trial" if it had then been available. Id. at ¶ 49. He also alleges that he "has no other remedy that may be awarded as recompense for the lost claim other than this action." Id. at ¶ 50.

      Plaintiff claims that while he was out of his cell on June 21, 2008, "Lt. Karanzan instructed McGregory to breach the security lock on Plaintiff's cell and to destroy the Letter and legal materials related to the Letter that were . . . in Plaintiff's cell." Id. at ¶ 24. McGregory is alleged to have removed plaintiff from his cell and escorted him to Lt. Karanzan's office for an interview after discovering copies of a pamphlet that plaintiff had been involved in drafting. Id. at ¶ 22. The pamphlet "encouraged his fellow inmates to assert their civil rights and avoid being overly friendly with corrections officers" and "included a list of numbered blank spaces where

inmates could identify those inmates who they believed to be unduly cooperating with corrections officers." Id. at ¶ 20. Plaintiff alleges that McGregory had searched his cell "in apparent retaliation [for plaintiff's] exercise of his freedom of speech" through his involvement with the production of the pamphlet. Id. at ¶ 21.

Plaintiff claims that "the Letters and legal materials related to the Letters" were "out in plain view in his cell" during McGregory's search. Id. at ¶ 21. He contends that while he was being escorted to Lt. Karanzan's office, he "repeatedly requested that McGregory give him the opportunity to secure the Letters and legal materials related to the Letters." Id. at ¶ 22. He claims that "McGregory denied this request, but assured Monroe that his cell was secured." Id. at ¶ 23. Plaintiff claims that after McGregory left him at Lt. Karanzan's office, "McGregory returned to Plaintiff's cell and either seized or destroyed the Letters" and related legal materials. Id. at ¶ 25. Plaintiff asserts that he knew McGregory had entered his cell because "McGregory then returned to Lt. Karanzan's office bearing Plaintiff's typewriter which had been stored in Plaintiff's cell." Id. at ¶ 26.

After he was interviewed about the pamphlets, plaintiff was placed in the restricted housing unit. Id. He remained in the RHU for the remainder of the events alleged in his complaint. Id. at ¶ 29. Plaintiff claims that upon his arrival in the RHU he immediately "sent a written request to Lt. Karanzan, requesting permission to secure the Letters" and related legal materials or to heave them sent to him in the RHU. Id. at ¶¶ 27, 28. His requests were denied. Id.

Plaintiff claims that on or around June 22, 2008, inmate Matthew Smith observed two corrections officers (John Does 1 and 2) removing plaintiff's belongings, including his legal materials, from his former cell. Id. at ¶ 30. Smith allegedly told "[p]laintiff that neither the

Letters nor the legal materials related to the Letters were placed in storage by John Does 1 and 2." Id. at ¶ 30.  On July 3, 2008, plaintiff sent a written request to SCI Graterford's Property Room, asking to have his legal materials and letters delivered to him. Id. at ¶ 31.  The Property Room sent him a box of legal materials that did not include the letters or related legal materials on or around July 10, 2008. Id. at ¶ 32.  Plaintiff then requested and received permission to access the Property Room on July 31, 2008, where he claims he discovered that his letters and related legal materials were missing. Id. at ¶¶ 33-34.

Plaintiff filed a formal grievance related to the missing letters and legal materials (No. 239288) on August 12, 2008. Id. at ¶ 35.  It was denied. Id.  Plaintiff subsequently filed two appeals, a Grievance Appeal and a Final Grievance Appeal, on August 22 and October 31, 2008, respectively. Id. at ¶¶ 36-38.  He alleges that "after reviewing the Grievance Appeal, Superintendent DiGuglielmo refused to remedy the wrongs committed against Plaintiff and denied the Grievance Appeal." Id. at ¶ 37.  The Final Grievance Appeal was also denied. Id. at ¶ 38.

Plaintiff also claims that after discovering that his letters and legal materials were missing he contacted inmates "Dickerson and Stover to retrieve the copies he had entrusted to their care," but was informed that they had been seized and destroyed in a July 4, 2008 search by defendant corrections officers Hargrove,[2] Bright and John Does 3 through 6. Id. at ¶¶ 39-40.  Plaintiff alleges that while Dickerson and Stover protested the corrections officers took and destroyed "all legal materials in the possession of Dickerson and Stover," including those which belonged to him. Id. at ¶ 40.  He claims the corrections officers acted on orders from Captain Dohman "in retaliation for a lawsuit filed in 2005 by Plaintiff, Dickerson, and Stover against Capt. Dohman

---

[2] "Corrections Officer Hargrove is no longer employed at Graterford and . . . has not been served." Dkt. No. 27 at ECF p. 3 n.1.

and other corrections officers at SCI Graterford.  See Monroe v. Beard, No. 2:05-cv-04937-LS,"

that "was dismissed after appeal on December 1, 2008," Id. at ¶¶ 13, 42.[3]

## STANDARD OF REVIEW

Defendants move to challenge plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  In deciding a motion to dismiss under Rule 12(b)(6), the Court is required to accept as true all of the factual allegations in the complaint, and all reasonable inferences permitted by the factual allegations, viewing them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 350–51 (3d Cir. 2005); see also Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). "[C]onclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'  To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 556 U.S. at 678.

## DISCUSSION

### I. Claims Against DiGuglielmo

Defendants contend that plaintiff has not sufficiently alleged facts to warrant the imposition of individual liability on DiGuglielmo.  For plaintiff to prevail, his second amended complaint must allege that DiGuglielmo had "personal involvement in the alleged wrongdoing."

---

[3] Plaintiff's second amended complaint also identifies two other prior lawsuits plaintiff filed against prison staff: Monroe v. Beard, No. 2:06-cv-4193 (dismissed on January 7, 2007) and Dickerson v. DiGuglielmo, No. 2:07-cv-2984-AB (dismissed on March 9, 2009).  Dkt. No. 26 at ¶ 13.  Of the defendants in this action, only DiGuglielmo was named as a defendant in these lawsuits.  Dkt. No. 27-1 at ECF p. 12-21.

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode, 845 F.2d at 1207 (citations omitted).  Such allegations "must be made with appropriate particularity."  Id.

I find plaintiff's allegation that "after reviewing the Grievance Appeal [of Grievance No. 239288], Superintendent DiGuglielmo refused to remedy the wrongs committed against Plaintiff and denied the Grievance Appeal,"  Dkt. No. 28 at ECF p. 13, citing Dkt. No. 19 at ¶ 37, is not sufficiently particular to demonstrate DiGuglielmo's personal involvement in the alleged destruction of plaintiff's letters and related legal materials.  Plaintiff contends his allegation is sufficient because "[b]y actively reviewing Plaintiff's grievance, Defendant DiGuglielmo obtained actual knowledge of the violations" and he "acquiesced in the violations" by "failing to remedy the wrong committed against Plaintiff" in his denial ruling.  Dkt. No. 28 at ECF p. 13.  I disagree.  The denial of a grievance or mere concurrence in an administrative appeal process is insufficient to establish personal involvement.  See Simonton v. Tennis, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right."); see also Croom v. Wagner, No. 06–1431, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); Robus v. Pa. Dep't of Corr., No. 04-2175, 2006 WL 2060615, at *3 (E.D. Pa. Jul. 20, 2006) (dismissing claims against the defendant where the "amended complaint fails to cite any facts that would give rise to actual knowledge").  Accordingly, I will dismiss plaintiff's claims against DiGuglielmo.

## II.     Right of Access to the Courts

Plaintiff's claim that defendants violated his right of access to the courts in Count I of his second amended complaint derives from the right to petition afforded under the First Amendment and the due process clause of the Fourteenth Amendments. Dkt. No. 26 at ¶ 62; see also Feliciano v. Dohman, No. 12-4713, 2013 WL 1234225, at *11 (E.D. Pa. Mar. 26, 2013). To withstand defendant's motion to dismiss his denial of access to the courts claim, plaintiff must allege that he has (1) suffered an actual injury in "that [he] lost [his] chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that there is no other 'remedy available to [him] as recompense' for the lost claim other than the present denial of access suit." Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008), quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002). "[T]he underlying cause of action, whether anticipated or lost, is an element that must be described in the [second amended c]omplaint, just as much as allegations must describe the official acts frustrating the litigation." Christopher, 536 U.S. at 415. Plaintiff's second amended "complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued . . . ." Id. at 417. His allegations must show that the underlying claim is based on "more than mere hope" and must sufficiently describe the remedy lost by defendants' actions. Monroe, 536 F.3d at 205, citing Christopher, 536 U.S. at 416-17.

Defendants argue that plaintiff's second amended complaint fails to state a claim for denial of access to the courts because he has not sufficiently alleged an actual injury resulting from the destruction of his letters and related legal materials. Dkt. No. 27 at ECF p. 9-12. Plaintiff counters that the allegations in his second amended complaint are sufficient because he

now "specifies the causal connection between the destruction of the Letters and his inability to file a [Post-Conviction Relief Act] petition."  Dkt. No. 28 at ECF p. 6.

The PCRA provides that a petitioner may be available for relief if his "conviction or sentence resulted from . . . [t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced."  42 Pa. C.S.A. § 9543(a)(2)(vi); see also Commw. v. Fiore, 780 A.2d 704, 711 (Pa. Super. Ct. 2001).  In order to succeed

> the petitioner must establish by a preponderance of the evidence that: (1) the evidence has been discovered after the trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) such evidence is not cumulative; (3) the evidence is not being used solely to impeach credibility; and (4) such evidence would likely compel a different verdict.

Fiore, 780 A.2d at 711, citing Commw. v. Abu-Jamal, 720 A.2d 79, 94 (Pa. 1998).  Plaintiff argues that the allegations in his second amended complaint are sufficient because they show that "[e]vidence that prosecutors and police officers had manufactured inculpatory evidence and coerced testimony in order to falsely convict [him]" was unavailable at the time of trial because of Gaines' false testimony and that the evidence "would have surely changed the outcome of the trial if introduced."  Dkt. No. 28 at ECF p. 7.

From the allegations before me, plaintiff's underlying PCRA claim appears to be more "hopeful" than "arguable":  "[p]laintiff could have obtained exculpatory evidence of prosecutorial and police misconduct sufficient to have changed the outcome of his trial;" Dkt. No. 26 at ¶ 66 (emphasis added); he "could have sought the appointment of counsel," id. at ¶ 46 (emphasis added); "counsel could have taken steps to locate Gaines," id. at ¶ 47 (emphasis added); "Gaines could have identified exculpatory evidence sufficient to show that prosecutors and police officers had manufactured inculpatory evidence and coerced testimony in order to

falsely convict Plaintiff," id.at ¶ 48 (emphasis added). While I agree that plaintiff has alleged that the allegedly destroyed letters might have had an impact on the outcome of his trial, I find that he still fails to set forth his underlying PCRA claim with sufficient specificity. Plaintiff's second amended complaint does not meet the requirements of Rule 8 for pleading his underlying PCRA claim under the standard set forth in Iqbal. It includes no allegations regarding the evidence used to establish plaintiff's criminal homicide convictions or the relevance of Gaines's original testimony thereto. Absent such allegations, the Court is (and defendants are) left to speculate with respect to the import of Gaines's original testimony in procuring plaintiff's conviction and whether any new evidence derived from her letter would not be cumulative or whether her testimony after recanting would have outweighed that of any other prosecution witnesses such that her letter was in fact likely to compel a different verdict. Plaintiff thus "has not alleged facts in the amended complaint from which it can reasonably be inferred that the case [he intended to make with the information in the letters he received] was not frivolous." Green v. Nish, No. 12- 00321, 2012 WL 4049834, at *4 (M.D. Pa. Aug. 27, 2012) report and recommendation adopted, 2012 WL 4049974 (M.D. Pa. Sept. 13, 2012); see also Jacobs v. Beard, 172 F. App'x 452, 456 (3d Cir. 2006), citing Christopher, 536 U.S at 414 ("The underlying lost or rejected claim must be specifically identified and meritorious."). I will grant defendants' motion to dismiss Count I of plaintiff's second amended complaint.[4]

---

[4] Plaintiff's access to the court claims will be dismissed with prejudice, as will his claims against DiGuglielmo. Plaintiff has already been afforded an opportunity to amend his complaint and state a legally sufficient basis for his claims and to allow further amendment would be futile and/or inequitable. See Alston v. Parker, 363 F.3d 229, 235–36 (3d Cir. 2004) ("[E]ven when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile.").

**III.     Retaliation**

Defendants also seek dismissal of plaintiff's retaliation claim against Dohman. Plaintiff alleges that Dohman retaliated against him "for the filing of various grievances and lawsuits" and that his "conduct was in violation of Plaintiff's rights under the First and Fourteenth Amendments . . . ." Dkt. No. 19 at ¶¶ 64-65. To state his claim for retaliation against Dohman, plaintiff must sufficiently allege that he (1) engaged in constitutionally protected conduct, (2) prison officials took adverse action against him sufficient to "deter a person of ordinary firmness from exercising his constitutional rights," Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000); and (3) the "the constitutionally protected conduct was a 'substantial or motivating factor' in the decision to discipline" the inmate. Rauser v. Horn, 241 F.3d 330, 333-334 (3d Cir. 2001), quoting Mount Healthy Bd. of Ed. v. Doyle, 429 U.S. 274, 287 (1977); see also Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir. 2002) (noting that the third factor requires the demonstration of a "causal link between constitutionally protected action and the adverse action taken against him"). Defendants argue that plaintiff has not sufficiently alleged the element of causation. See Dkt. No. 27 at ECF p. 14. I agree.

In order to establish a causal connection for purposes of his retaliation claim,

> plaintiff usually must prove either (1) an unusually suggestive
> temporal proximity between the protected activity and the
> allegedly retaliatory action, or (2) a pattern of antagonism coupled
> with timing to establish a causal link. . . . In the absence of that
> proof the plaintiff must show that from the evidence gleaned from
> the record as a whole the trier of fact should infer causation.

Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (citations and internal quotations omitted). Beyond his having named Dohman as a defendant in a lawsuit filed in 2005, plaintiff has offered no facts to support his speculative assertion that Dohman's alleged July 4, 2008 order to Hargrove, Bright and John Does 3 through 6 "to destroy the legal materials

-11-

of Plaintiff, Dickerson, and Stover," was retaliatory.  Dkt. No. 26 at ¶ 8.  Plaintiff only makes the conclusory allegation that "Dohman ordered the destruction of the materials in retaliation for a lawsuit filed by Plaintiff, Dickerson, and Stover against Capt. Dohman and other corrections officers at SCI Graterford."  Id. at ¶ 42.  His allegations lack the requisite "suggestive temporal proximity."  See Vernon v. Custer, No. 13-1497, 2013 WL 62447729, at * 9 (M.D. Pa. Dec. 3, 2013) (finding insufficient "an assertion of retaliation based solely on circumstantial proof of some temporal link between the plaintiff's conduct and the defendant' actions when . . . these events are separated by months").  Likewise, plaintiff's allegations with respect to this single incident involving Dohman are not sufficient to show that Dohman engaged in a pattern of antagonism.  Also, while plaintiff's second amended complaint cites to two other lawsuits he filed against other prison staff in 2006 and 2007, Dkt. No. 26 at ¶ 13, plaintiff has not alleged any facts to suggest that Dohman was aware that plaintiff had filed either of these actions.  Nor has plaintiff alleged any other facts that would support a finding that Dohman was substantially motivated to make the alleged order that the other corrections officers destroy the materials in Dickerson and Stover's cell because of plaintiff's 2005 lawsuit.  Accordingly, I will dismiss plaintiff's retaliation claim against Dohman.[5]

## V.     Grievance 24060649

Finally, in plaintiff's response to defendants' motion to dismiss, filed on September 24,

---

[5] In ruling on defendants' prior motion to dismiss plaintiff's first amended complaint, I did not find plaintiff's allegations of causation with respect to Dohman were insufficient.  See Dkt. No. 24 at ECF p. 18, citing Dkt. No. 22 at ECF p. 11 (holding that defendants had "concede[d] that plaintiff's amended complaint includes specific allegations of retaliation by Dohman . . . .").  On review of plaintiff's allegations against Dohman, I find that they are.  Because I had not previously issued findings with respect to the sufficiency of plaintiff's allegations of retaliation against Dohman, I will grant plaintiff leave to amend his retaliation claim against Dohman to the extent that he is able to allege facts sufficient to plead the requisite causal connection between his protected activity and Dohman's alleged retaliatory conduct.

2013, he asserts that he "has amended his Complaint to omit claims arising from Grievance 240649 in compliance with the Court's Order of July 31, 2013." Dkt. No. at ECF p. 13. Plaintiff's second amended complaint does not allege any new facts relevant to this grievance, which dealt with Officer Hayes and John Doe 7's alleged involvement in the removal of plaintiff's personal belongings from his cell in the RHU on August 16, 2008. Dkt. No. 26 at ¶¶ 52-60. However, plaintiff contends in his response to defendant's motion that his "claims arising from the activity described in Grievance 240649 should be reinstated by the Court." Id. at ECF p. 15. I decline to consider plaintiff's arguments with respect to Grievance 240609, as they effectively constitute an untimely motion for reconsideration of my Order of July 31, 2013. Local Rule 7.1(g) provides that motions for reconsideration "shall be served and filed within fourteen (14) days after the entry of the . . . order . . . concerned." E.D. Pa. Local R. Civ. P. 7.1(g). Accordingly, I will dismiss plaintiff's allegations against Hayes and John Doe 7.

     An appropriate Order follows.